UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

        Plaintiff,

Case No. 20-cr-20274

Hon. Arthur J. Tarnow

v.

Charles Joseph Kimbrough Rizzio,

        Defendant.

_____/

**Government's Sentencing Memorandum**

Defendant Charles Rizzio is a gun trafficker. He sold five firearms—including a fully automatic gun—a rifle scope, and hundreds of rounds of ammunition to undercover officers and agents between May and June 2020. Agents recovered approximately 59 firearms from his residence in June 2020, including three fully automatic weapons. At the time of his arrest, the defendant admitted to selling at least 100 firearms in the previous three years for a profit and without a license. He is responsible for trafficking countless firearms into our community.

The parties agree that defendant's guidelines are 57 – 71 months. For the reasons stated in this memorandum, the government recommends a sentence of **64 months' imprisonment** as "sufficient

1

but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3353(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

## I. Facts and Procedural History

### A. Offense Details

In April 2020, law enforcement identified the defendant as a possible gun trafficker. The Michigan State Police Mobile Narcotics Enforcement Team (MNET) and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) began conducting undercover purchases of firearms from the defendant shortly thereafter. (PSR ¶¶ 9 – 11).

On May 14, 2020, the defendant sold a Palmetto PA-15 multi-caliber rifle, a L.A.R. M.F.G. Griz 15 multi-caliber rifle, and a Vortex Fire I rifle scope to an undercover officer in exchange for $2,300. (PSR ¶ 12). During the transaction, the undercover officer expressed interest in purchasing a fully automatic gun and the defendant showed the officer a picture of a 9mm gun with a switch allowing it to function in a fully automatic capacity. (*Id.*) The defendant and the officer then discussed the cost of 1,000 rounds of ammunition. (*Id.*)

On May 18, 2020, the undercover officer told the defendant that he wanted to purchase ammunition for the rifles, and also asked about purchasing a 1911 type pistol. (PSR ¶ 13). In another conversation the defendant asked the officer if he had a concealed pistol license (CPL) and the officer replied that he did not. (*Id.*) The defendant and the undercover officer then discussed a Colt 1911 pistol that the defendant's acquaintance had for sale. (*Id.*)

On May 19, 2020, the defendant sold an undercover officer a Colt Government Model 1911, .45 caliber pistol and approximately 880 rounds of .223 ammunition in exchange for $1,560 in a parking lot in Dearborn Heights, Michigan. (PSR ¶ 14). The pistol had originally been purchased by one of the defendant's suppliers, Robert Borgert, in September 2018. (*Id.*)

On May 28, 2020, the defendant sold an undercover ATF agent a JL & Company Limited Sten MK II 9mm submachine gun in exchange for $1,500 in a parking lot in Dearborn Heights, Michigan. (PSR ¶ 15). The defendant described how to use the gun in the fully automatic setting during the transaction. (*Id.*) The defendant also told the undercover agent that he should scratch the serial number off the gun

3

(presumably so that law enforcement could not trace the gun back to the defendant in the future).

On June 2, 2020, the defendant sold an undercover ATF agent a Mossburg Model 590, 12-gauge pump shogun in exchange for $550 in a parking lot in Dearborn, Michigan. (PSR ¶ 17). The defendant indicated that one of his suppliers (presumed to be Jack Newman) had provided the firearm. (*Id.*) Fixed video surveillance of the defendant's residence showed an individual matching Newman's description arrive at the defendant's residence and provide him with a shotgun resembling the one that the defendant sold to the undercover agent on June 2nd. (*Id.*)

Six days later, authorities executed a search warrant at the defendant's residence. (PSR ¶ 18). Agents and officers recovered approximately 59 firearms from the house and the defendant's car; three of those guns were fully automatic weapons. (*Id.* at ¶¶ 18 – 19). The defendant was arrested and agreed to be interviewed after he was advised of his rights. (*Id.* at ¶ 19). The defendant admitted that he had purchased two machine guns approximately one year prior at a flea market in Romulus, Michigan. (*Id.*) He also identified two of his suppliers—Borgert and Newman. (*Id.*) He estimated that he had

4

purchased approximately 20 – 50 firearms from Borgert and 30 firearms from Newman over the previous 1 – 2 years. (*Id.*) The defendant also admitted to selling approximately 100 firearms over the previous three years and to making approximately $50 – $100 per transaction. (PSR ¶ 23). The defendant has never been licensed to deal firearms.

### B. Criminal History

In March 2012, the defendant was sentenced to 12 months' probation and received a delayed sentence for the charge of disorderly person out of the 18th District Court in Westland, Michigan. (PSR ¶ 40). In September 2013 the defendant completed the diversion requirements and an order of *nolle prosequi* was entered. (*Id.*) The defendant has no other convictions and/or arrests on his criminal record.

### C. Charging and Plea

The defendant was charged in a three-count indictment on June 25, 2020. (PSR ¶ 3). On May 18, 2021, the defendant pleaded guilty to two of those charges: Count 1: Dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A); and Count 2: Illegal possession and

transfer of a machinegun in violation of 18 U.S.C. § 922(o). (PSR ¶ 5). The Court has set this matter for sentencing on October 26, 2021.

## II. Section 3353(a) factors warrant a sentence of 64 months

The sentencing factors under section 3353(a) warrant a sentence of 64 months in this case. The defendant's guidelines are 57 – 71 months, as calculated by the Probation Department. The parties agree that this is the applicable guideline range. A sentence in the middle of that range—or 64 months—is both necessary and appropriate under the applicable sentencing factors.

### A. Nature and circumstances of the offense

The nature and circumstances of the defendant's offenses are serious. The defendant willfully engaged in the dealing of firearms, including fully automatic weapons, without a license, and for a profit. The details of the undercover buys in this case reveal that the defendant sold guns to individuals who admitted that they did not have a CPL. (*See* PSR ¶ 13). The defendant also trafficked guns which ended up in the hands of convicted felons, such as Antonio Edwards. (*See* PSR ¶ 10). And the defendant's behavior here was not limited to one or two gun purchases the way it is for someone convicted as a straw purchaser,

6

for instance. The defendant systematically and willfully sold firearms for a profit and without a license for years without regard for the consequences that his behavior would have on his community. He had relationships with multiple gun suppliers from whom he bought the weapons, and he even tracked down specific guns that his customers wanted, as evidenced by the details of some of the undercover transactions in which the defendant sold guns. The serious nature of his offenses weighs in favor of a 64-month sentence.

**B.     History and characteristics of the defendant**

The government acknowledges that the defendant's history and characteristics are overwhelmingly positive. So much so that they make the defendant's criminal behavior here that much more unwarranted. According to character letters provided by the Probation Department, the defendant ran his own lawn maintenance and construction business and garnered the trust and support of his fellow community members. The defendant's PSR notes no adverse circumstances from his childhood that could explain his current behavior, nor any history with alcohol or substance abuse which would explain his prolonged unlawful conduct. His criminal history is also limited.

But the stark contrast between the defendant's conduct in this case and the strong foundation and apparent reputation he had in his community makes his criminal behavior especially concerning. He was a successful business owner and well-liked by members of his community, yet he still willfully chose to traffic guns—including fully automatic weapons—into his community, for a profit, and without a license. Nothing about the defendant's history and characteristics can ameliorate the severity of this conduct.

## C. Seriousness of the offense, promotion of respect for the law, and just punishment for the offense

The seriousness of the defendant's offenses, promotion of response for the law, and just punishment for the offenses all weigh in favor of a 64-month sentence in this case. The defendant is responsible for trafficking countless firearms into our community. After selling five guns, including a fully automatic gun, to undercover officers and agents in the span of just a couple of months in 2020, the defendant admitted to selling at least 100 firearms for a profit in the three years leading up to his arrest; agents recovered approximately 59 firearms, including three fully automatic guns, from his residence alone at the time of his arrest. There is no way to calculate the full extent of the damage the

8

defendant's actions have had on the individuals potentially harmed by the guns he is responsible for trafficking. Thus, a 64-month sentence—which sits in the middle of the defendant's guidelines range in this case—appropriately accounts for the severity of the defendant's conduct, promotes respect for the law, and provides a just punishment for the defendant's offenses.

### D. Adequate deterrence and protection of the public

Finally, the defendant's sentence should adequately deter the defendant—and others committing similar offenses—from engaging in this conduct in the future, and properly protect the public from the kind of prolific gun trafficking on display in this case. Gun trafficking is not a victimless crime. Unlicensed firearms dealers like the defendant—and particularly dealers who sell fully automatic weapons—unquestionably fuel the illegal possession and/or use of firearms responsible for recent spikes in gun violence in communities such as Detroit. [AP News, *As Covid-19 Ravages US, shootings, killings are also up*, December 28, 2020](); [Click On Detroit, *Detroit Mother Loses Second Son to Gun Violence in 2 Years*, July 14, 2021](); [Detroit News, *Detroit remains among nation's most violent big cities, FBI statistics show*, September 27, 2021]().

9

A 64-month sentence is not only appropriate, but necessary in this case to provide adequate deterrence and protect the public from additional harm caused by the defendant's actions.

### III. Conclusion

For the reasons stated in this memorandum, the government recommends a sentence of 64 months' imprisonment.

Respectfully submitted,

SAIMA S. MOHSIN
Acting United States Attorney

*s/ Erin Ramamurthy*
Erin Ramamurthy
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9788
erin.ramamurthy@usdoj.gov

Dated: October 20, 2021

## CERTIFICATE OF SERVICE

I certify that on October 20, 2021, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Michigan using the ECF system, which will send notification of the filing to all users of record.

*s/ Erin Ramamurthy*
Assistant U.S. Attorney
